IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RANDA MULANAX, | § | |
| for herself and all | § | |
| others similarly situated, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | CAUSE NO. 1:15-cv-1189-RP |
| | § | |
| STEADFAST MANAGEMENT | § | |
| COMPANY, INC. | § | |
| AND SIR MONTECITO, LLC | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF'S RESPONSE TO**
**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT (ECF 12)**

Plaintiff Randa Mulanax files this Response to Defendants' Motion to Dismiss First Amended Complaint (ECF 12), and in support respectfully states the following:

## I. SUMMARY OF ARGUMENT

The Court should deny the motion.  Based on the allegations in the First Amended Complaint (ECF 10, "FAC"), Defendant Steadfast Management Company, Inc. ("Steadfast") is an "owner" as defined by the Water Code Statute because it "purports to be the landlord of tenants"; the Water Code and Rules prohibit Defendants from adding a 9% service fee because Defendants bill for water and sewer using an "allocated," not "submetered," methodology; Defendants never registered with the PUC as the owner of the property, a prerequisite for an owner to bill its tenants for water and sewer; and Plaintiff pleads a plausible breach of contract action because she was billed using an "allocated" methodology rather than the contracted-for "submetered" methodology, resulting in excessively high water and sewer charges.

## II. PROCEDURAL BACKGROUND

Plaintiff filed suit on December 17, 2015 (ECF 1).  Defendants filed a motion to dismiss on March 7, 2016 (ECF 7), and Plaintiff filed her FAC in response on March 28, 2016 (ECF 10) as a matter of course pursuant to FED. R. CIV. P. 15(a)(1)(B).  Defendants withdrew their original motion to dismiss, and filed the current Motion to Dismiss ("Motion", ECF 12), on April 25, 2016.  Plaintiff timely files this response.

## III. FACTUAL BACKGROUND

### A.  The Texas Legislature and the Public Utility Commission implement a comprehensive water and sewer billing framework

To encourage water conservation and fair billing practices, the Texas Legislature enacted and later amended Chapter 13, Subchapter M of the Texas Water Code, TEX. WATER CODE § 13.501 *et seq.* (hereafter "Water Code Statute") to regulate how apartment house owners may

pass along water and sewer utility costs to their tenants, to prevent owners from using water utility billing as a separate profit center, and to encourage conservation through submetering of multifamily properties.  Under the Water Code Statute, the "utility commission" was authorized and directed to "adopt rules and standards" under which utility service costs could be passed along to tenants.  TEX. WATER CODE §§ 13.503(b), 13.5031.  In accordance with that directive, the Texas Public Utility Commission promulgated rules.  *See* 16 TEX. ADMIN. CODE § 24.121 *et seq.* (hereafter "PUC Rules").  The PUC Rules are intended to protect tenants by "establish[ing] a comprehensive regulatory system to assure that the practices involving submetered and allocated billing of dwelling units ... for water and sewer utility service are *just and reasonable and include appropriate safeguards for tenants*." 16 TEX. ADMIN. CODE § 24.121(a).

**B.**   **"Owners" are liable for violations, and Plaintiff pleads with detail that Steadfast is an "owner" because it "purports to be the landlord of tenants"**

Apartment house "owners" are liable for violations of the Water Code Statute and PUC Rules.  TEX. WATER CODE § 13.505.  "Owner," as defined in the Water Code Statute and PUC Rules, includes "legal titleholders" **and** "corporations that purport to be the landlord of tenants" at apartment houses.  16 TEX. ADMIN. CODE § 24.121(c)(10).  Plaintiff brought this putative class action against SIR Montecito, LLC ("Montecito") (the legal titleholder of the real property) **and** its affiliate, Steadfast (the company the mutual parent created to serve as the landlord of tenants at the complex and that bills for water/sewer charges and collects those monies).  Plaintiff included robust factual allegations that, when taken as true, show Steadfast purported to act as the landlord of tenants at Montecito, making it an "owner" under TEX. WATER CODE § 13.501(5).

Steadfast is not an independent, third-party agent contracting with Montecito.  Rather, the parent entity, Steadfast Companies, for purposes of its investments, uses affiliated entities (here Steadfast and Montecito) to purchase and hold record title to specific apartment properties in its

portfolio and to run the apartments. Montecito, a subsidiary of Steadfast Income REIT, Inc., was formed as a shell entity with no employees to serve as the legal titleholder to the apartment house where Plaintiff Mulanax resided. *See* FAC, ¶¶ 13, 14. Steadfast is the apartment house management-arm of the Steadfast Companies, providing comprehensive, full-service landlord services to its affiliates that hold legal title to Steadfast Companies' apartment properties, including Montecito. *See* FAC, ¶¶ 4, 12, 14, 15. Steadfast is the primary operating entity within the Steadfast Companies' umbrella, is the entity with the employees to manage and interact with tenants, and serves as the purported landlord of tenants at the apartment houses. It sets all policies and runs all operations at the apartment houses owned by the Steadfast Companies' enterprise. *Id.* It makes all decisions regarding the management and operations at the apartment houses. *Id.* While Steadfast may suggest it is merely a third-party "agent," in reality it is Steadfast that makes all the decisions, and calls all the shots at the apartment houses. The shell titleholder entities lack actual input into the actual operation of the complexes. *Id.*

In its apartment operations, Defendant Steadfast employs leasing consultants, leasing coordinators, managers, bookkeepers, and others. The salaries and benefits of those persons are reimbursed by Steadfast Income REIT, Inc. In 2015 alone, Defendant Steadfast was paid or reimbursed more than $26,000,000 for serving as the actual or purported landlord of tenants at the apartment houses. *See* FAC, ¶¶ 14, 15. Any tenant in Texas living at a Steadfast apartment property must deal with Steadfast as the actual or purported landlord, and Steadfast performs all landlord services, duties, and functions at Steadfast-branded apartment properties in Texas. *See* FAC, ¶15. By way of example only, Steadfast's personnel perform the following functions at the apartment properties it manages, including at the Montecito (*see* FAC, ¶ 16):

- Lease, market, and advertise the apartment house
- Greet, assist, and qualify prospective residents, and prepare application paperwork
- Communicate leases and community policies

- Take maintenance service requests from residents and follow-up on service calls
- Process move-ins and move-outs following company policies and procedures and guidelines established by federal, state, and local agencies
- Assist with supervision of all vacant apartment turnover procedures
- Perform annual unit inspections.
- Collect rents and control delinquencies
- Serve legal documents and process and supervise all eviction proceedings.
- Assist in the collection of all monies due to the Community (rents, damages, late fees, etc.) and the preparation of receipts
- Inspect the property on a regular basis and report all safety hazards, property damage, and needed repairs to maintenance staff

Steadfast also sets the policies (the rules) with which the tenants at the apartment houses must comply and enforces those rules as the landlord (the "***Steadfast Management Company, Inc. 'Community Policies and Recreation Facility Rules'***" are incorporated as "part of [Plaintiff's] lease" in Paragraph 19.1 of the lease).  *See* FAC, ¶ 16.  Steadfast has ultimate responsibility and control over the landlord function, including billing and collecting charges for water and wastewater utilities at the apartment houses. Here, Steadfast billed Plaintiff and the class for the alleged unlawful water/sewer charges, and collected the payments.  *See* FAC, ¶ 17.

## C.    Defendants assess an administrative charge of 9% on all water and sewer bills; Plaintiff contends that violates the Water Code Statute and PUC Rules

Plaintiff alleges Defendants assess a 9% administrative charge on all water and sewer bills in violation of the Water Code Statute and PUC Rules.  FAC, ¶¶ 28, 42-46.

The 9% charge is apparent on the face of the water bills; therefore, it is undisputed in this case that the fee at issue is <u>directly related</u> to water and sewer charges.  FAC, Ex. B.  The 9% monthly service charge may be assessed <u>only</u> by an owner that bills for water/wastewater by "submetering," as defined in PUC Rules.  Defendants' unavoidable problem is that they bill for water and sewer using a recognized "allocated" billing methodology under PUC Rules.  FAC, ¶¶ 28, 42-46.  The Rules clearly hold the 9% charge is not permitted when the owner uses one of the five permitted "allocated" billing methodologies.  *Id.*

4

Again, Defendants do not dispute they charge the 9% service fee on water and sewer bills, but claim the fee is proper, notwithstanding the Rules, because their allocated billing method should be treated as a form of "submetering" billing (even though it is not). At most, Defendants have raised a fact question that cannot be resolved at this stage.

**D.      Defendants breached the Lease Agreement**

Plaintiff also asserts an alternative breach of contract claim against Montecito (the Steadfast affiliate acting as the legal titleholder of the property) because the Lease specifies that the complex will bill for water/wastewater by "submetering" her actual water/wastewater consumption each month. Attached to the lease are the PUC rules that define submetered billing. FAC, Ex. A, at 8-11. As described at length in the FAC (¶¶ 22-28, 42-52), Defendants are charging for water/wastewater by allocating their total water costs from the retail utility provider using one of PUC's specified allocation methodologies.   Plaintiff is <u>not</u> charged for water/wastewater based on her individually submetered water usage. *Id.*

Plaintiff alleges in the FAC that if Defendants had billed for water/wastewater based on submetered usage, her water/wastewater bills would have been dramatically lower. FAC, ¶¶ 48-51. By using an allocation billing formula that utilizes submeters on hot water lines only to estimate usage (as opposed to using a submeter to specifically measure all water used), Plaintiff alleges she was charged for and paid a significantly higher cost for water and sewer. *Id.* Plaintiff has adequately alleged a breach of contract action, and has alleged damages proximately flowing from the breach. FAC, ¶¶ 22-28, 42-52, 79-81. The motion to dismiss the breach of contract claim should be denied.

**E.      Defendants never registered with the PUC as required by the Rules**

Plaintiff further alleges Defendants never registered with the PUC as an owner of Montecito before billing tenants for water/sewer, as required by TEX. ADMIN CODE § 24.122(a).

FAC, ¶¶ 53-54.   Defendants admit they never registered as the owner of the property, but then argue that they are permitted to rely on the registrations filed a decade or more ago by the *prior* owners of the property.   Motion at 11-12.   The "we are grandfathered because the prior owner followed the law even though we did not" defense is not contemplated by the PUC Rules and certainly is not a proper basis on which to grant a Rule 12(b) motion.

## IV. STANDARD OF REVIEW

As this Court stated in *Dominguez v. Mid-America Apartments, et al*, Case 1:15-cv-293-RP (W.D. Tex., March 31, 2016), when evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).   Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).

Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.   The court must initially identify pleadings that are more than legal conclusions (which are not entitled to the assumption of truth), then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief.   If not, "the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting FED. R. CIV. P. 8(a)(2)).

## V. ARGUMENT

### A.   Steadfast is an "owner" under the Water Code Statute.

The question initially presented by Defendants' motion is whether a property management company like Steadfast can, under certain factual circumstances, fall within the definition of an "owner" under the Water Code Statute.   Because that definition expressly includes an entity that "<u>purports to be</u> the landlord of tenants," Plaintiff pleaded detailed factual allegations that, when taken as true, make it plausible that Steadfast is an entity that "purports to be the landlord of tenants," *see supra* § III(C).   Steadfast contends this Court should ignore all of those factual allegations and rule as a matter of law that only a party holding (or claiming to hold) title to an apartment building can be an "owner" of such a building.   That position is legally and factually insupportable, particulary when the Court takes as true the allegations in the FAC, and dismissal under Rule 12(b)(6) is not warranted.

### 1.   An "owner" is, *inter alia*, one who "purports" to be a "landlord."

The Water Code defines "owner" to include a company "that purports to be the landlord." The Water Code states that an "owner" is any entity that is:

> the legal titleholder of an apartment house, manufactured home rental community, or multiple use facility **and any individual, firm, or corporation that purports to be the landlord of tenants in the apartment house**, manufactured home rental community, or multiple use facility.

TEX. WATER CODE § 13.501(5) (emphasis added).   By using the conjunction "<u>and</u>," the Water Code Statute unambiguously contemplates that a single "apartment house" could have more than one statutory "owner."

In addition, by using the phrase "purports to be," the Legislature broadly defined the role of a "landlord of tenants."   As a verb, "purport" means "to claim to be or do a particular thing

when this claim may not be true,"[1] or to "[a]ppear to be or do something, especially falsely."[2] The Legislature plainly intended the second clause in the statutory definition of "owner" to cover not only legal titleholders and landlords in the technical sense, but also parties that "claim" or "appear" to be landlords—even if they do so "falsely."  That broad definition precisely defines the management role fulfilled by Steadfast.

In this respect, the Texas Supreme Court decision in *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433 (Tex. 2009), is instructive.  In *Entergy*, the Supreme Court sought to determine whether a "premises owner" could fall within the definition of "general contractor," defined by the statute in question as one "who 'undertakes to procure the performance of work.'" *Id.* at 437. The Court "applied a meaning that is consistent with the common understanding of those terms," finding that "undertake" generally means to "take on an obligation or task," and "procurement" means "the act of getting or obtaining something."  *Id.* at 437-38.  The Court thus concluded that a "general contractor is a person who takes on the task of obtaining the performance of work."  *Id.* at 438.  Because that broad definition "describes precisely what Entergy did," the Court concluded that a "premises owner" could fall within the broad definition of "general contractor."  *Id.*

Applying the *Entergy* analysis here, a leasing agent or management company like Steadfast can be an "owner" when the definition of "owner" includes "a company that purports to be the landlord of tenants," and when the definition was not drafted to expressly exclude apartment management companies and agents of the titleholder.

Whether a management company is an "owner" under the Water Code Statute and PUC Rules by "purporting to act as a landlord of tenants" at an apartment house is a factual

---

[1] http://www.merriam-webster.com/dictionary/landlord (viewed March 7, 2016).
[2] http://www.oxforddictionaries.com/us/definition/american_english/purport (viewed March 7, 2016).

determination. The alleged facts and supporting exhibits attached to the FAC, summarized at § III(B), *supra*, taken as true and indulging all reasonable inferences, support a plausible claim tending to show that Steadfast "purported to act as the landlord of tenants at the apartment house" where Plaintiff lived, and therefore is an "owner" under the Statute.

### 2. The plain and ordinary meaning of "landlord" is broad and includes management companies and agents of the legal titleholder.

The term "landlord" is not defined in the Water Code Statute or the PUC rules that implement the Water Code Statute.  Accordingly, this Court should give the term its plain and ordinary meaning, with appropriate attention to the context of this Water Code Statute and the common usage of the term in the industry.

To begin, dictionary definitions of "landlord" reach the manager of an apartment house. Merriam-Webster provides this full definition of the term "landlord": "(1) the owner of property (as land, houses, or apartments) that is leased or rented to another; (2) the **master** of an inn or **lodging house:** innkeeper."[3]  This second definition perfectly fits Steadfast.

Statutory definitions of "landlord" are comparably broad.  Both nationally and in Texas, the definition of "landlord" is expansive and covers leasing agents and management companies. In Texas, one section of the Texas Property Code that applies to apartments defines "landlord" to include both a "managing company" and a "managing agent."  *See* TEX. PROP. CODE § 92.151(7) ("'Landlord' means a ... **management company, or managing agent**, including an on-site manager")[4] (emphasis added); *see also id.* § 94.001 ("landlord" means "the owner **or manager** of a manufactured home community **and includes an employee or agent** of the landlord")

---

[3]   http://www.merriam-webster.com/dictionary/landlord (viewed March 7, 2016) (emphasis added). British usage is comparably broad. *See* http://www.oxforddictionaries.com/definition/english/landlord (viewed March 7, 2016) ("1. A man (in legal use also a woman) who rents out land, a building, or accommodation. 1.1 A man who keeps **lodgings**, a **boarding house**, or a pub.") (emphasis added).
[4] This subsection of the Property Code expressly applies to apartments.  TEX. PROP. CODE § 92.152(b)(4) ("a dwelling to which this subchapter applies includes: ... (4) a living unit in an apartment ...").

(emphasis added).  Steadfast is unmistakably familiar with this broad definition, as it appears in a subsection of the Property Code that expressly applies to security devices at apartments. Therefore, it cannot be said that the Texas Legislature generally takes a narrow view of the term; on the contrary, the Legislature has codified the broad definition reflected in the dictionary.

This broad definition of "landlord" comports with the definition used in other states, confirming that the ordinary meaning of the term includes both the legal titleholder and the "manager" of apartment complexes.  *See* FAC at 13, n. 17 (listing exemplar state laws). Therefore, ordinary dictionary definitions, definitions codified by other Texas statutes, and definitions codified by similar statutes nationally all confirm that by the conduct alleged in the FAC, Steadfast is a "landlord" of tenants under the Water Code Statute—and at the very least, it "purports to be the landlord."

### 3. The Legislature knows how to limit the meaning of "landlord," but did not do so in the Water Code Statute.

To be sure, the Legislature would be free to codify a narrower definition of "landlord." For example, in one section of the Property Code (TEX. PROP. CODE § 92.001(b)), the Legislature chose to define "landlord" as "the owner, lessor, or sublessor of a dwelling, but does not include a manager or agent of the landlord unless the manager or agent purports to be the owner, lessor, or sublessor in an oral or written lease."  *Id*.  As that statute illustrates, the Legislature might choose to codify a narrow definition of "landlord" in some circumstances, and might choose to restrict how a management company can "purport to be a landlord."  But it did not do so in the Water Code Statute in question in this case.  Likewise, the PUC has never attempted to restrict the broad definition of "owner" or "landlord" in its rules.

The Legislature could have chosen to restrict the reach of "owner" in the Water Code to the legal titleholder, but it did not do so; it extended that definition to both the legal titleholder

and any other company "that purports to be the landlord of tenants in the apartment house . . . ." TEX. WATER CODE § 13.501(5) (emphasis added).  And the Legislature could have chosen to restrict the reach of "landlord" in the Water Code by language expressly excluding the agents or management companies, as it did in TEX. PROP. CODE § 92.001(b).  But it did not do that either. Far from suggesting that a limited definition of "owner" or "landlord" should control this case, the absence of any similar limitation in the Water Code demonstrates that the Legislature fully intended the term "landlord" to have its full, ordinary meaning.

     **4.**     **Steadfast's interpretation fails to give effect to the ordinary meaning of "landlord" and renders language in the Water Code Statute surplusage.**

Steadfast relies on the American Heritage College Dictionary to try to confine the term "landlord" to the owner of the property or an "innkeeper," and argues that a management company like Steadfast is not an "innkeeper" because an apartment complex is not an "inn." Motion at 7.  But that reasoning overlooks the fact that the very definition quoted refers to one "who runs a rooming house," similar to the Merriam-Webster reference to a "lodging house." An apartment house is a "rooming house" and thus its manager is a "landlord."

Indeed, the Water Code Statute expressly refers to "the landlord of tenants **in the apartment house**."  TEX. WATER CODE § 13.501(5) (emphasis added).  Clearly, therefore, the Legislature intended its use of "landlord" to apply to apartment houses.  Steadfast's interpretation of the term "landlord" would essentially nullify the second half of the statutory definition, because no party other than the legal titleholder could qualify as "the landlord of tenants in the apartment house."  Moreover, Steadfast's reasoning would nullify the "purports to be" clause of the Water Code Statute.  If an "owner" is both "the legal titleholder" and one "who purports to be the landlord of tenants," yet the only person who can qualify as a "landlord" in the context of an apartment house is the legal titleholder, the definition is circular.  If the "landlord"

can only be the legal titleholder, in other words, the "purports to be" clause in the Water Code Statute is rendered meaningless.

Both of these consequences are unacceptable under the canons of statutory construction. *See*, *e.g.*, *Chevron Corp. v. Redmon*, 745 S.W.2d 314, 316 (Tex. 1987) ("We will give effect to all the words of a statute and not treat any statutory language as surplusage if possible."); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) ("It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose.") (citation omitted).

By expressly including those who merely "purport to be" a "landlord of tenants" in an "apartment house," the Legislature clearly intended the definition of "owner" to include parties who are not the "legal titleholder" of the apartment house.  Steadfast falls squarely within the text of the Water Code Statute.  This Court should not create an exception for management companies and agents that does not appear in the text of the Water Code Statute.  *See Cameron*, 618 S.W.2d at 540 ("we believe every word excluded from a statute must also be presumed to have been excluded for a purpose."); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008) (declining to read additional words into statute in construing statute); *Underkofler v. Vanasek*, 53 S.W.3d 343, 364 (Tex. 2001) ("We defer to the legislature's explicit policy determination that only two exceptions apply... and we will not rewrite the statute to add ... a third."); *Republican Governors Ass'n v. Bell*, 421 S.W.3d 42 (Tex. App.—Austin 2013, pet. denied) ("we may not add requirements to a statute that are not contained in the plain language").

**5.      Steadfast's reliance on an opinion from another court is misplaced.**

Steadfast relies on Judge Sparks's decision in *Regehr v. Greystar*, which dismissed

without prejudice claims against a management company that the plaintiff had pled was an "owner" under the Water Code Statute.  Steadfast argues "[t]he same result should happen here." Motion at 2.  *Regher* is currently being reconsidered and should not be followed.

Notably, the defendants in *Greystar* did not dispute "owner" status in their motion to dismiss; accordingly, neither side briefed it.  It was raised orally by Greystar at the hearing on the motion to dismiss, and only cursorily discussed.  Judge Sparks, *sua sponte*, and without the benefit of any briefing, issued a short opinion dismissing the management company because it was not the record titleholder of the apartment property at issue.

Plaintiff filed a Motion for New Trial or to Alter or Amend the Judgment fully briefing the issue and explaining that the Water Code Statute defines "owner" as "the legal titleholder **and** any individual, firm, or corporation that purports to be the landlord of tenants in the apartment house."   A hearing was held before Judge Sparks on April 7, 2016.  The matter is currently under review by Judge Sparks.  Therefore, to the extent the Court takes judicial notice of Judge Spark's original opinion, it should also take notice of the entirety of the file in that case, including the subsequent briefing and transcripts.[5]

## B.   Defendants are not entitled to charge a 9% service fee on allocated water/wastewater bills to Plaintiff and the putative class.

Plaintiff alleges Defendants violated the PUC Rules by assessing a 9% monthly service charge on top of water and sewer bills.  Plaintiff alleges specific facts that, when taken as true, tend to show Defendants engaged in unlawful conduct.  Specifically, Plaintiff alleges that the particular methodology Defendants use to calculate tenants' water bills—regardless of what

---

[5] Regardless of how Judge Sparks ultimately rules on this issue, his decision is not binding precedent on this Court of equal dignity.  The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another, and where a second judge believes that a different result may obtain, independent analysis is appropriate. *TQP Development, LLC, v. Intuit Inc.,* 2014 WL 2810016, *6 (E.D. Tex. 2014); *Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366, 1371 (1991) (same).

Defendants call that methodology—is what the PUC calls an "allocated" methodology.  Because the Water Code Statute and PUC Rules only allow for the imposition of a 9% service fee when a "submetered" methodology is used, Defendants are liable.

PUC Rules permit only two categories of water/wastewater billing: (a) submetered billing, and (b) allocated billing.  (16 TEX. ADMIN. CODE § 24.124 **Charges and Calculations**):

(i)     submetered rules are set forth in 16 TEX. ADMIN. CODE § 24.124(d) **Calculations for submetered utility service**, and

(ii)    allocated methodology is set forth in 16 TEX. ADMIN. CODE § 24.124(e) **Calculations for allocated utility service**.

The "**Calculations for submetered utility service**" provide for a 9% "service charge" ((16 TEX. ADMIN. CODE § 24.124(d)(3) ("service charge for ... owner or manager of apartment house: a ... apartment house may charge a service charge in an amount not to exceed 9% of the tenant's charge for submetered water and wastewater service ...").  There is no corresponding right to charge a 9% service charge in the "**Calculations for <u>allocated</u> utility service**."  *See generally* 16 TEX. ADMIN. CODE § 24.124(e) (rule devoid of reference to 9% charge).

Defendants' only argument is that because Montecito uses submeters for some purposes, it must be employing a "submetered" methodology.  Motion at 8-9.  Defendants' assertion is incorrect and fails to comport with the Water Code Statute and the PUC Rules.  Notably, Defendants make no effort to explain how their billing methodology corresponds to the "**Calculations for submetered utility service**" (16 TEX. ADMIN. CODE § 24.124(d)(3)) other than declaring that a device called a submeter is involved.  A review of the applicable code sections demonstrates that Defendants' billing method is "allocated," not "submetered."

Rather than starting with a label of "allocated" or "submetered," it is better to begin with an understanding of how water use is ascertained in Plaintiff's unit, and how the bill is prepared:

Step 1   A master meter measures the total amount of water flowing from the public utility to the complex (A$= Master meter total water bill from public utility)

Step 2    A submeter installed at the unit measures the amount of **hot** water only (not all water) used by a unit
(B=Mulanax Unit Hot Water (in gallons))

Step 3    The billing company adds up all **hot** water used by all units
(C=Total Hot Water Used by All Units)

Step 4    The billing company uses a mathematical calculation to determine what percentage of total **hot** water use is allocable to Mulanax's unit
(B/C= Mulanax percentage ("D%"))

Step 5    Using a ratio, the billing company calculates what amount of the total water used by the complex should be allocated to Mulanax
(A$*D%= Mulanax monthly bill)

FAC, ¶ 44.  This allegation in the FAC is supported by Plaintiff's utility bills:

**Sewer:**    ...Your bill for sewer is based on the percentage of hot water you use compared to the other residents at your community.  For example, if you used 5% of the hot water used by all the residents, then you will be billed for 5% of all the sewer.
...
**Water:**    ...  Your bill for water is based on the percentage of hot water you use compared to the other residents at your community.  For example, if you used 5% of the hot water used by all the residents, then you will be billed for 5% of all the water.

FAC, Ex. B.

Comparing the "**Calculations for allocated utility service**" in the PUC Rules with how water usage is calculated at the complex, it is incontrovertible that Defendants are using "allocated utility service":

(e)    **Calculations for allocated utility service.**
(1) Before an owner may allocate the retail public utility's master meter bill for water and sewer service to the tenants, the owner shall first deduct: [Common Area Usage]
(2) To calculate a tenant's bill:
(A)    for an apartment house, the owner shall multiply the amount established in paragraph (1) of this subsection by:
...
(v)    **the individually submetered hot** or cold **water usage of the tenant's dwelling unit divided by all submetered hot** or cold **water usage in all dwelling units**;

16 Tex. Admin. Code § 24.124(e)(2)(A)(v).  The process in PUC Rule (e)(2)(A)(v) describes the exact allocation methodology Defendants utilize.

Notably, the **allocation** set forth in PUC Rule (e)(2)(A)(v) acknowledges that the hot water usage at the unit will be "submetered."  In other words, the PUC Rules make clear that the use of a device called a submeter is not dispositive of which billing method is being used; therefore, Plaintiff's allegation that Defendants used submeters on hot water lines is not contrary to Plaintiff's theory of recovery.

Defendants emphasize that a device called a "submeter" is involved, but that is irrelevant. The key is what the device measures.  If it measures the "tenant's monthly water consumption," then the owner is able to bill based on "submetering"; if the device measures "hot water usage," then the owner is estimating water usage using an allocation billing method.  Under the facts alleged in the FAC, Defendants do not qualify as billing under the submetering rules.

Under the PUC rules, to lawfully calculate a bill based on "**submetered utility service,**" the bill "must be calculated each month as follows:"

> (1) water utility service: the retail public utility's total monthly charges for water service (less dwelling unit base charges or customer service charges, if applicable), divided by the total monthly water consumption measured by the retail public utility to obtain an average water cost per gallon, liter, or cubic foot, multiplied by the tenant's monthly consumption or the volumetric rate charged by the retail public utility to the owner **multiplied by the tenant's monthly water consumption**;

16 Tex. Admin. Code § 24.124(d)(1) (emphasis added).

Here, Defendants could not bill Plaintiff for her water and sewer usage using her "monthly water consumption," because they only measured her hot water use and used that data to allocate their total water costs among their tenants.  As a result, Defendants cannot provide "submetered utility service" under PUC Rules.

The PUC Rules even define "**[a]llocated utility service**" as "[w]ater or wastewater utility service that is master metered to an owner by a retail public utility and allocated to tenants by the owner." 16 TEX. ADMIN. CODE § 24.124(1).  That is exactly what is done here. Defendants are billed by the public utility for total water usage at the complex, then they allocate that cost to tenants based on a mathematical ratio of the tenant's hot water usage (as a percentage of total hot water usage). The result is that Plaintiff and other class members are not billed for water based on their actual consumption.

By contrast, in order to qualify as "submetered utility service," the complex must have "water utility service measured by point-of-use submeters[6] **when all of the water used in a dwelling unit is measured and totaled**."  16 TEX. ADMIN. CODE § 24.124(12).  That does not occur here; "all of the water" is not being measured, only the hot water use is being measured.

Defendants attach legislative history that they claim supports the right to assess a 9% fee for submetering.  (Motion, Ex. 1, ECF 12-2).  That point is not contested; what is contested is whether they are "submetering."   Even the legislative history notes that "[t]he installation of submetering equipment within each apartment of a multi-tenant unit accurately measures resident consumption, allowing residents to be billed only for their actual consumption."  *Id.* The bill analysis further explains that the Legislature chose to require submetering on new apartment buildings because residents are likely to reduce their consumption when "provided with an accurate measurement of their utility usage."  *Id.*  But as the FAC illustrates, that does not happen at Montecito.  Defendants' tenants are billed based on a formula calculated from their hot water usage only.

If Defendants had installed submeters that individually metered each unit's **actual** hot

---

[6] A "point-of-use submeter" is "a device located in a plumbing system to measure the amount of water used at a specific point of use." 16 TEX. ADMIN. CODE § 24.124(11).  In this case, such a point-of-use submeter was used to measure the hot water line.

and cold (total) water usage, and tenants were billed only for their **actual water** consumption, then Defendants would have been permitted to add a 9% service fee to the monthly bill.  But that did not happen here; accordingly, the 9% service fee is not permitted.

Plaintiff adequately alleged a cause of action for violation of the Water Code Statute and the PUC Rules under these facts.  Plaintiff and the class are being overcharged by 9% each month, and they are entitled to statutory relief as a result under TEX. WATER CODE § 13.505.

### C.       <u>Defendants, as owners, failed to comply with the PUC registration rules.</u>

The PUC Rules require that an "owner" who intends to bill tenants for utility service <u>**shall**</u> register with PUC:

> **Owner Registration and Records.** (a) **Registration**. An owner who intends to bill tenants for submetered or allocated utility service or who changes the method used to bill tenants for utility service shall register with the commission in a form prescribed by the commission.

TEX. ADMIN. CODE § 24.122(a).   On its website, PUC provides the form to be completed.[7]

As Plaintiff alleges (FAC at ¶ 54), and as Defendants' motion implicitly acknowledges, neither Steadfast nor Montecito—the only Defendants in this case and the only two parties alleged to be the "owners" of the complex—ever completed the required registration and filed it with PUC prior to billing Plaintiff and the putative class.  To get around this obvious violation of the Water Code Statute and PUC Rules, Defendants contend they "meant to do that" and rely on filings by the **_prior_** "owners" of the Montecito apartment complex sixteen and ten years ago. Worse, they do so based on evidence that is outside the scope of the allegations in the FAC. Motion at 11.[8]  Defendants claim they are not required to file a registration form if the **_prior_**

---

[7]  http://www.puc.texas.gov/industry/water/Forms/Register_Submetering.pdf
[8]  To support this argument, Defendants ask the Court to take judicial notice of what they claim are TCEQ forms filed by Montecito's prior owners.  The Court should decline that invitation for several reasons.  First, Plaintiff did not attach those documents to the FAC, and they are not central to Plaintiff's claim (to the contrary, they are irrelevant).  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (courts may take judicial notice of documents "if they are referred to in the plaintiff's complaint and are central to her claim" (internal

owners did so. *Id.* That argument does not comport with, or have any foundation in, the language of the Water Code Statute and PUC Rules.

The PUC Rules require each and every owner who intends to bill tenants for utility service to register with the PUC. The words "prior owner" or "previous owner" do not appear in the PUC Rules; thus, there is no statutory basis for Defendants' argument that a current "owner" can rely on something a prior "owner" did. The Legislature could have added such words or made it clear that an "owner" could rely on something a prior party did to comply with the rules; it did neither. The Court should not add words to the statute that do not exist in the text.[9]

Moreover, such an interpretation of the statute contravenes the plain meaning. The PUC Rules state that "[a]n owner <u>who intends to bill tenants</u> for submetered or allocated utility service ... shall register with the commission in a form prescribed by the commission." 16 TEX. ADMIN. CODE § 24.122(a) (emphasis added). A party does not become the "owner" until it buys the real property or "purports to be the landlord of tenants" at the complex. Only after one becomes the "owner" can the "owner" "intend to bill." Whenever the present (new) owner makes a decision to bill, thereby "intending to bill tenants," the registration requirement arises.

Defendants nevertheless argue they did not "intend to bill" their tenants because the prior owners were "already billing tenants." Motion at 11. That is not an answer; it is a confession that the Defendants violated the statute by continuing prior billing practices without registering.

---

quotation marks omitted)). Second, even if the Ninth Circuit decision Defendants rely on were binding on this Court, that case also recognizes that the documents must be "central to the plaintiff's claim," referred to in the complaint, and be agreed authenticated by the parties. *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011). None of those factors are present here. The purported TCEQ forms are not referenced in or central to the FAC, and Plaintiff objects to their authenticity, as they are not self-authenticating and have not been authenticated by Defendants.

[9] *See Cameron*, 618 S.W.2d at 540 ("we believe every word excluded from a statute must also be presumed to have been excluded for a purpose."); *City of Rockwall*, 246 S.W.3d at 625-26 (declining to read additional words into statute in construing statute); *Underkofler*, 53 S.W.3d at 364 ("We defer to the legislature's explicit policy determination that only two exceptions apply to the statute of limitations for these statutory claims, and we will not rewrite the statute to add ... a third."); *Republican Governors Ass'n*, 421 S.W.3d at 50 ("we may not add requirements to a statute that are not contained in the plain language").

The PUC Rules require every owner who "intends to bill" its tenants to register with the PUC. The FAC alleges Defendants intended to bill their tenants, but never registered with the PUC, thereby stating a claim.

**D.      Plaintiff raised a plausible breach of contract claim in her FAC.**

In the FAC, Plaintiff asserts an alternative claim for breach of contract against Montecito, alleging that "Montecito contracted to bill for water and wastewater on a submetered basis, but in fact billed on an allocated basis," resulting in assessments that exceed what would have been billed if Montecito had complied with the agreement and billed on a true submetered basis. FAC, ¶¶ 79-81.  Plaintiff and the Montecito Class seek recovery from Montecito of all amounts assessed in excess of what would have been collected if the water and sewer costs had been truly submetered as agreed. *Id*.  The Lease specified that Plaintiff would be billed for her actual water and wastewater usage using an individual submeter.  FAC, Ex. A, "Water and Wastewater Submetering Addendum."   Instead, Montecito billed her for water/wastewater using an allocation method. FAC ¶¶ 26-27, 42-44.  This practice resulted in her being charged an amount several times the amount supported by her actual water/wastewater usage, FAC ¶ 47-52.

All elements of a breach of contract action exist, have been pleaded, and have been supported by factual allegations.  FAC ¶ 79-81.  The Motion should be denied.

**Conclusion and Prayer**

For these reasons, Plaintiff requests that the Court deny Defendants' Rule 12(b)(6) motion to dismiss in all respects.

Respectfully submitted,

By: */s/ Britton D. Monts*
BRITTON D. MONTS
Bar No. 14303900
THE MONTS FIRM
401 Congress Ave., Suite 1540
Austin, Texas 78701-3851
bmonts@themontsfirm.com
(512) 474-6092 – Telephone
(512) 692-2981 – Fax

R. MARTIN WEBER, JR.
Texas Bar No. 00791895
RICHARD E. NORMAN
Texas Bar No. 00788128
CROWLEY NORMAN LLP
Three Riverway, Suite 1775
Houston, Texas 77056
rnorman@crowleynorman.com
mweber@crowleynorman.com
(713) 651-1771 – Telephone
(713) 651-1775 – Fax

JASON W. SNELL
Texas Bar No. 24013540
THE SNELL LAW FIRM, PLLC
The Littlefield Building
106 E. 6th Street, Suite 330
Austin, Texas 78701
firm@snellfirm.com
(512) 477-5291 – Telephone
(512) 477-5294 – Fax

RUSSELL S. POST
Texas Bar No. 00797258
rpost@beckredden.com
KARSON K. THOMPSON
Texas Bar No. 24083966
kthompson@beckredden.com
BECK REDDEN LLP
1221 McKinney Street, Suite 4500
Houston, TX 77010
(713) 951-3700 – Telephone
(713) 951-3720 – Fax

***ATTORNEYS FOR PLAINTIFF AND
THE PUTATIVE CLASS***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all counsel of record via the Court's electronic filing service pursuant to the Federal Rules of Civil Procedure on April 29, 2016.

*/s/ Britton D. Monts*
BRITTON D. MONTS